We're on our spot facing the morning call, 212 on 176, People v. Brandon Riley. On behalf of the Appellant, Mr. Van Richards. On behalf of the Appellant, Mr. Matthew Schmidt. Mr. Richards. Good morning. Good morning. My name is Van Richards. I represent the Appellant, Brandon Riley. This case arises out of a search and seizure going back to December of 2010. The search was pursuant to a warrant which named my client and targeted my client and his residence and also a garage. So on December 10th, the police executed that warrant, made a seizure of some cannabis in an area where Mr. Riley is alleged to have slept, charged him with constructive possession of a misdemeanor amount of cannabis or pot. In that same search, they seized several pounds, a much greater quantity, from a garage. Mr. Riley was prosecuted on the misdemeanor and in January, pled guilty to the sentence. The state's attorney was there. The pot that was seized from the garage was seized in the same search and no action was taken on it by the state. In June of 2011, some six months later, my client was indicted for the two pounds of pot in the garage. They charged him with possession and possession of the intent to deliver that particular pot. The trial court found that this was the same act, correct? Pardon me? The trial court found that under Brookhouse, that this was not the same act, correct? Yes. The possession of these two items was not the same act. Exactly. Why is that wrong? It's wrong because of the case law and because this is all one continuous transaction and one act, not a distinct and separate act. They rely upon, their position is that the possession of the pot in the garage is a separate and distinct act which is related but separate. They rely on Brookhouse for one thing. Brookhouse is a case where they executed a warrant. They found some cannabis in the man's house and during the course of that, they elicited some information that he had a locker in a bowling alley in an entirely different county. So the court said, well, yeah, that is a separate act. It wasn't part of the search. So it hardly, I think, argues for persuasion that this particular case was a separate act. I mean, there was pot found in the house, in the garage, in the same search. Incidentally, in the Brookhouse case, what they found in the other bowling alley was not pot. They found cocaine. Griffin, for example, cited by them, talked about the distinction between two different kinds of drugs making a different act and that wasn't even a state case. But in this particular case, I relied, I think, on the closest case is Hyatt where they raised the same issues that they raised here. They raised, well, they raised the issue of knowledge. State didn't know. In the Hyatt case, they came in, they did a search. They found a pornographic movie of a minor. And in addition, there was other pornographic literature there, which they then came back and charged again. And the court held, the appellate court held, that that was all part of one continuous act. There was different items. In this case, it's the same item. It's pot. There's pot in the garage and there's pot in the hall. Mr. Richards, how is the state supposed to join these charges if it doesn't reasonably know who possesses the contraband? Well, interestingly, on the issue of knowledge, they raised that same issue in the other things that were found in Hyatt's house. And they said they rejected the knowledge question that was available to them. In this particular case, the file is replete with information which targeted my client. For example, the ubiquitous John Doe appears here in form of an affidavit to secure a search warrant in which he says, and he appeared, this was not an out-of-court affidavit, he appeared in front of the judge issuing the warrant, said that my client, Mr. Riley, that he had been in the house a day or so before the search, that he observed him in possession of, what, two pounds of pot, about the same amount that was found in the garage. So if you follow that information, also at the time of the search, they secured fingerprints. Now, the state's theory, and both of us, both the court, both the appellant and the police cite the Lamarge case, what is knowledge? Well, we've got the Lamarge case, which talks about aptness and knowledge. How good does the state case have to be before they take note of the adjoinder statute? Now, in this particular case, the state had six months to develop their case. Would it get better if they had fingerprints? Sure, it would get better. But why don't they avail themselves of the statute which, it seems to me, addresses this kind of problem? In Section C's where two or more offenses are charged, as required by Section B, the court, at the interest of justice, may order that one or more of the charges be tried separately. If they're developing a case on the garage, they have complete control of whether they're going to accept, in January, my client's plea of guilty. But this case is different, I think, or I'd like your opinion if it is, in that in this house there were other people who were arrested in possession of drugs as well. On their person. On their person, but the two pounds were not in the house at that time. And that's the only thing that John Doe said, that he went into the house. He didn't mention the garage. So we've got other people arrested. We have a different location of the item from the house to the garage. Why shouldn't the state be sure who they believe owns that by further investigating? They could still be sure by deferring the prosecution and possible implication of the Joinder statute. Under their argument, they can defer, I don't know how long, before they make a decision on that. They had complete control of the case. They could have continued the misdemeanor case. They had all kinds of options. And the state was present. You know, one of the requirements of the statute is that the state be involved. Well, the state is involved in both the misdemeanor and this case. The misdemeanor case bears the name of the state's attorney on the prosecution. And, of course, the state instituted this case. So it seems to me that none of the cases would indicate that you can just go ahead and willy-nilly prosecute the initial case while you're developing the other case. Now, the usury case, which they cite as an example of we didn't know. The usury case was charged with unlawful discharge of a weapon or something like that. And they had no evidence to implicate the defendant in usury with the murder. There was a killing in the case. So they didn't know until three, four, five months later or something. And the defendant made admissions to people. So they had evidence. That's not like this case. In this case, they have people saying that my guy, nobody else but my guy, is in possession of two pounds in that house. And they get a search warrant for the house and the garage. And you're right. The affidavit does not mention house. He just says premises in the house. Whoever issued the issue of the search warrant issued without further the right to go in both the garage and the house. Now, as far as the being separate acts, it seems to me that none of the cases cited by the state involve this type of situation. Counsel, could I ask a question, please? I'm sorry? May I ask a question? Certainly. You claim that the standard on review is de novo because there was not an evidentiary hearing. But there was some sort of hearing, was there not? There was a hearing, yes. There was a motion with pretty much stipulated facts. Okay. So if there were stipulated facts, then the fact that there wasn't evidence taken doesn't necessarily mean that it's now de novo review. Why isn't it necessarily manifestly erroneous? Because it's a question of mixed law and fact. It could be. Okay. It could be. As far as the first prong of their argument, which is that these are separate acts, I don't think there's any case. For example, the most recent case is the Hunter case, which is a case where a defendant is arrested and charged with constructive possession of cannabis. Also, in the area, they find guns. Entirely different offense. The issue of compulsory joinder as a 2012 case was raised and the court said this is all one deal. It's one separate act. The fact that there are guns on the one hand and contraband on the other doesn't change the fact that these should have been brought and be subject to the joinder statute. And I think Brookhouse, I talked to you about Brookhouse totally separate. Find this stuff in a bowling alley somewhere else. Usury is the one where there is a confession or admission six months later. They have nothing to tie the defendant to the murder. And they say, well, yeah, that is separate. In our case, well, they had something to tie the defendant to the murder. He's the one that shot the guy. They knew he shot the guy. So they charged him with the shooting. They didn't charge him with intentional murder, but they shot him with shooting him. So he's the only one they were looking at. Respectfully, I don't think that they charge him with the shooting. I think they charge him with aggravated discharge of a weapon. They never charged him initially with what he's shot or shot in the air as hitting anybody. Why isn't the fingerprint in this case the same as the statement in that in user? Well, the fingerprint, all the fingerprint is additional evidence against the defendant. It makes their case better. There's no question about that. But the issue is, do they have enough knowledge to at least hold off on accepting the guilty plea of my guy, availing themselves of the section of the statute that says, hey, we can do this separately. So I think it's a quantification. I'm sorry. Who was John Doe? Was he an undercover police officer or was he some junkie? He's mysterious. He's ubiquitous, Judge. We don't know who he is. All we know is that he appeared in front of a judge and he swore under oath that he saw my guy with two pounds. Well, ubiquitous means he's everywhere. Oh, yes. As opposed to anonymous. I was being facetious there. John Doe gets in a lot of cases. He went that way. Okay. I see what you're saying. I thought you meant that he's everywhere. He's everywhere. He's only in this case in that respect. Okay. Any other questions? No. Thank you. You'll have an opportunity to make the vote. Thank you. Mr. Schmidt. Mr. Schmidt. Was John Doe an undercover police officer or was he an informant that was everywhere? If I recall correctly, Your Honor, he was an informant of a police officer, not, in fact, an undercover police officer himself. Good morning. May it please the Court, my name is Matthew Schmidt. I'm representing the people in this case. Now, in order for two crimes to necessarily be joined, you have to have two things. You have to have knowledge of the prosecuting officer and you have to have one act. Now, here, there was no knowledge until, as several justices commented, we had the fingerprint evidence tying the defendant to the marijuana in a separate location. Well, what's your response then to Mr. Richard's comment that the informant indicated that the defendant had in his possession two pounds and that just happened to be either two pounds is ubiquitous or this was, in fact, the same two pounds that the defendant allegedly possessed? Well, it could have been the same two pounds. It could very well not have been the same two pounds. Again, I think that goes to the question of knowledge. And as I believe that affidavit says, it's found on the premises. I believe it was in the house, I believe. So this could be a separate two pounds. It could be another two pounds. Two pounds could very well be ubiquitous. There may have been more in the attic falling down. If they found the drugs in the alley, would it have been similar to the other case? I'm sorry, which other case? The bowling alley case. The bowling alley case. Would it have been more similar? Well, they're both alleys. They're both alleys. Well, I do think they are similar in that I believe you can argue that it is found in two different locations. We have a small amount found in a basement with indicia of ownership by the defendant and a much larger amount in a separate detached garage. So it really is two locations. In Hunter, you had two locations. In Hunter, actually, it was the same location separated by a door. The defendant was waiting in a vestibule with cannabis and a handgun, and there was another handgun found about five feet away from him. He was in a stairwell, though. He was in a hallway or a vestibule. The gun was in a stairwell.  It was a separate location. It was about five feet away. Sorry, is there going to be a ten-foot rule, five-foot rule? What's the rule? Well, I think at least in that case it was found in the same building. I think that's a distinction that can be found here. I don't know. These are the same premises being searched under the same search warrant at the same time. That's correct, Your Honor. But I think that there's still a distinction. The court in Brookhouse made a very distinguished hide in that location is a very important element of constructive possession as opposed to actual possession. But you would agree that this case falls between Hunter and Brookhouse? Yes, Your Honor. All right. So what's the rule? Your Honor, I hesitate to establish a bright-line rule myself. However, I do think that two separate buildings falls on the side of not having to be one possession act. But the two separate buildings conceivably were under the control of the defendant here who was either the renter or the owner. I believe the house was owned by his mother when he was staying there. Okay. What if the building, the garage, had a padlock on it and the keys to that padlock were on his keychain? Forget the fingerprints. Would that have been sufficient to have knowledge that maybe he's in constructive possession to the exclusion of others unless other people are found with similar keys that will unlock the padlock? Your Honor, that may have been if he had exclusive control over the building. We don't know. As the record shows, there were eight people in the house. Six people lived there. Two other people were found with marijuana on their person, which I think goes, again, to the knowledge element. It could have been many different people in this residence that had control or access to the marijuana in the garage. We just didn't know until we got the fingerprint evidence back from the lab. In fact, there was no padlock on this door, and it was an open door, wasn't it? The record does not say that there was a padlock or that there was any lock whatsoever. What about Mr. Richard's point that why didn't they wait? I mean, they charged everybody right then with what they found on their person or in the defendant's case what they found in the bedroom that he customarily slept in. Yes, Your Honor. Why couldn't they wait? I can't speculate as to why the state attorney waited. Perhaps it was because it could have belonged to so many people. Why wait on the charge? Why did they bring the reasonably small charges? I mean, nobody was charged with a felony in that first foray through, were they? I don't believe so. I only know the defense. So we've got a felony pending against somebody. Correct. Why don't they just seize everything, know where everybody is, and get their fingerprint evidence? I can't answer as to why it wasn't charged all at once. Aside from the fact that we didn't know who it would belong to, I don't think we wanted to charge everybody with it and then just continue everybody's misdemeanor cases until we have knowledge. All right, well, then let's go back directly to Mr. Riley. The Section C says that this may mean that it has to be charged. Correct, Your Honor. But they could be tried separately. Does that literally mean tried separately, or does the defendant have the right to come in and plead guilty if he's been charged with something? It says tried separately. Is that significant? A trial is different than a plea of guilty. Correct, Your Honor. It sounds like he came in and he pled guilty almost on maybe first arraignment or close thereto. It wasn't set for trial. Correct, Your Honor. I think it is specific to when two charges are brought, and they can be tried separately in the interest of justice. I've run into it before on other cases with sexual assaults that all occur around the same time. But I think the key point is that the state doesn't have to do that if we don't have the knowledge or if it's not based on the same act, which in this case, neither of those things are true, so you weren't required to compose rejoinment. Are they the same act committed simultaneously, which would suggest maybe concurrent sentences versus separate acts committed simultaneously? I'm having a conceptual problem with the idea that if things are not within close proximity to each other, that the act of possession is one and the same. They may be simultaneous. They may occur in the same time frame. But things like that have happened before. Yes, Your Honor. What is the basis? What's the rationale for the courts previously determining that these are all one act? Does it relate to, for purposes of merger or sentencing? Or is it actually a metaphysical determination? Well, Your Honor, I believe that eventually they did determine that there were separate acts, citing Brookhouse and relying on Brookhouse because they were in different locations. I cannot venture to guess what the effect on sentencing would be. I didn't study that particular issue for this case. Does the issue surrounding some of these cases a continued investigation? I read Ursery a while ago, so refresh my recollection. Was Ursery a situation where the cellmate came forward later and said, hey, this guy just told me something, or did they put a wire on him? This was a case where the cellmate informant came forward. Okay, so there was no further investigation going on. It's just like the state, oh, my gosh, we became aware of this. Whereas in Lamog, it seems to me there was continued investigation going on regarding the reckless homicide charges, and then that's what led to the court talking about aptness of the charge as opposed to knowledge. They knew the charge was there. They knew someone died. They knew the defendant was the one who was driving the other car. And then the issue was we're going to continue our investigation. The issue is one of aptness versus knowledge. Why is this not an aptness situation? Because it's clear that like Lamog and unlike Ursery, the state was continuing its investigation and had information that this guy, based on the search warrant, was possessing two pounds of pot. Correct. I believe the key phrase that Your Honor just stated was that in Lamog, they knew the defendant was driving the car. They knew that there was some act by the defendant that would lead to an effect which would be charged. How does the search warrant not take that act and, you know, kind of shoot down your argument? Because we don't know who owns the marijuana in the garage. It could be anybody. At least in Lamog, we knew that the defendant was driving the car. In other cases, we knew that in, I believe, the, sorry, in Hyatt, we knew the defendant owned all the child pornography. There was no question about that. We had knowledge this is something that the defendant did. In this case, we did not. It could have been many people as opposed to Ursery where I guess that the investigation continued as to because someone murdered the victim. But new evidence came to light, evidence that we just didn't have before, which is similar to this case. While it wasn't as a result of active investigation, it was still something that gave us knowledge as to who committed a particular crime. Baker doesn't say this, but it seems like Baker's a situation where they sent the pill or pills to the lab and then got the lab back later. Although the case doesn't really say that, but that would make sense to me as to why it happened the way it did where they charged the one thing early on and then they waited and then they charged the controlled substances later. And that's another app in this case. That's a knowledge case. That's saying the state had knowledge that the person possessed the pills. Now, I know what you're going to say is that there's no knowledge that this guy possessed the cannabis. Correct, Your Honor. And in Baker, it was the defendant had actual possession. All the pills and alcohol and everything was found on him. So I think that distinction can be made because here we have constructive possession in two different locations. It's not that the defendant was carrying mystery pills that we needed to go get tested to see if they were, you know, sugar or LSD. How would you categorize the situation? The defendant is a person of interest or the defendant is one of several people who are persons of interest or the defendant is the suspect or the defendant is one of several suspects. What of those four fits this situation the best in your opinion? In my opinion, I would say the defendant is among several persons of interest. As I said before, there were at least two other people that had marijuana in the house. While the affidavit did say that John Doe saw the defendant with marijuana at one point, it could have been different marijuana. That marijuana could have been moved to other places. This could be entirely separate. It could be one of many people. And how do you distinguish a suspect from a person of interest? Does probable cause come in there somewhere or speculation or an articulable suspicion or is this just a community caretaking concept? That's an excellent question, Your Honor. No, it's a conundrum. It's an excellent conundrum, Your Honor. I guess it would vary from case to case. But in this case, it just feels like since we didn't have knowledge and there were so many people that it was possible that had access to this garage that it would be more actually persons of interest than suspects. Suspects seems to me to be inherently a specific person in mind where this was several. Did any of the persons of interest, were any of them willing to testify against the defendant as the possessor of the pot in the garage? The record doesn't reflect that. There's no indication. This was a motion to dismiss almost from the beginning, so there really wasn't much evidence introduced or any witnesses called to try and dispose of this. What do you think the standard of review is? Well, Your Honor, originally I agreed with defense counsel that it was de novo as I thought it was an interpretation of statute question, but I take your point that it could be mixed law and fact if indeed there were stipulated facts as to possession and where the marijuana was. Or whether there was knowledge? Or whether there was required joinder? I mean, you said a bright-line test. This isn't a bright-line question. Correct. I was saying I would be hesitant to elucidate a bright-line test simply because there are issues of grade. There are certainly shades of gray. I think this definitely falls on two acts of possession as it is in separate buildings in completely different amounts and presumably different purposes. We have a very, very small amount found in somebody's room versus a much larger amount found in a garage that has containers and measures and all sorts of things that would implicate purposes of distribution. Hunter uses the de novo review standard. Correct. What then would be the difference between Hunter and this case? In Hunter, as Leo said before, it was all found in the same location, basically. It was found in the same building. The defendant was found with drugs and a gun on him, and then another gun was found five feet away, I think maybe through a doorway. But that's it, whereas here we have possession in two entirely different buildings. But I know I'm talking as to the standard of review. If Hunter's standard of review is de novo, why wouldn't our standard of review be de novo? I'm not sure, Your Honor. I was just responding to Justice McLaren's question. Here's a trick question. It's really de novo review. That's something that I've looked into extensively. No, I don't know. I've often had problems with de novo review. It makes me wonder why we have trial courts. Why don't you just bring the case up here and we'll try it ourselves? Wow. I don't know if you guys want to do that, but it's my question. Is there no further questions, Your Honor? No. No, thank you. Thank you very much. Mr. Van Richards. Pardon me, Mr. Richards. One of the issues here is what is knowledge. In the very strange limoge case, they talk about knowledge and aptness. So the question there to me is how good does the state's case have to be before they can say, well, we didn't really know. The case wasn't good enough to bring charges. Knowledge, they said they had knowledge. That was a case where the woman had a revoked license, and then there was a reckless homicide going out of it. So obviously those were distinct acts, and really the case wasn't decided on the issue of knowledge. They dealt with that issue and said there was knowledge. There might not have been aptness. Now, one thing the question brought up, in this case it was December the 10th when they seized the fingerprints. They had a month. The defendant entered his plea in January, January the 7th. They had the fingerprints for a month. They also knew that they had a defendant under charges, but they ignored the statute. They didn't try to separate them. They didn't try to delay it at all. And everything in the case focused on my client. We have John Doe there with personal knowledge a day or so before saying that my guy has two pounds in his possession. So did you argue that the state intentionally or unnecessarily delayed its investigation? Yeah, I argued that they sat on it. Sat on it for a month? Yeah, I argued that. Now, what facts did you have to base that on? I mean, this isn't CSI where we're watching it on television and five minutes later they get fingerprints. I mean, do you know that they didn't do anything about it? All I know for sure is that they had the fingerprints since the day of the search and seizure. It seemed to me that they had the knowledge that they had a lift from the stuff in the garage that might have been persuasive to what they're going to do about it. And despite that, they allowed the misdemeanor case to proceed, pled guilty on the misdemeanor case. Now he's charged in June. I think the first charge may have been in April. The indictment was in June. Then they're charged. And this business about geography, the location, I think Justice Asher brought in this metaphysical term of, you know, the court is saying that this is all one act of possession, the constructive possession considered as all one act. That's what Hyatt said, especially when the search is, everything is from the target of the search warrant. I don't think it makes a bit of difference that that search warrant covered the garage right behind the house. I don't think the geography makes any difference in those. You found something in the basement of the house and something in the attic. It's part of the same transaction. It's part of that search. Same kind of drugs. Same location of the search warrant. And also, it's been in their knowledge and in their possession for a month. They knew nothing about it, and they ignore the statute. Could have continued the first case. All right, well, that raises a question for me, and I ask counsel. The statute says they can be tried separately. Your client comes in within a month of being charged and pleads guilty. It wasn't even set for trial, right? It wasn't. It was set for plea or setting, I think. Right. So can they say, oh, no, judge, don't let him plead guilty now. We have an investigation ongoing. Well, of course they could. Of course nobody would have denied a motion based on further investigation. I mean, they have that statute. It's not a secret. They have that knowledge that, hey, we've got a fingerprint lift here, and we've got five or two pounds in the garage, and we got Mr. Doe saying that my guy was in possession of him a couple days later. The marijuana that your defendant pled to was in his bedroom? They euphemistically called it a sleeping area, yes. Okay. It was constructive possession. It was constructive possession. Did anybody else have the right to sleep in that particular cubicle? Not to my knowledge, but that's not part of the record. They have indicia of him being there in that particular area. It's actually kind of a blanketed area in the basement or something where he slept. Could you assuage my problem here, which is he's been charged with misdemeanor possession based upon constructive possession in an area where other people don't necessarily or weren't charged with because it seems reasonable that they should not have been charged with constructive possession of marijuana in his bedroom. The proof of constructive possession or proof of possession of marijuana in the garage would be based upon constructive possession, but there is not indicia that he is the only individual who constructively possessed that area. There are other people who were charged thus or could have been charged thusly. So do you see the distinction between the two? The other people in the house that were charged are all guests in the house  So we're narrowing down to people who might have access to the garage and the only person that's named in the warrant and the only person who John Doe says has a large amount who he sees, according to him, is my client. So the question is can they just go ahead with this, delay forever? Otherwise the statute doesn't mean much. They have access to everything they need to charge this case. It takes six months and they accept my client's fee. It seems to me that's what the statute is trying to prevent and I think that's a violation of fundamental fairness. Any questions? I don't have any. Thank you. The case under advisement, court's adjourned. Thank you for listening.